IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------------------------ :
: 
ANTHONY BRAXTON, : CASE NO. 1:04 CV 0170
:
Pro Se Petitioner, :
: ORDER & OPINION CONDITIONALLY
-vs- : GRANTING PETITION FOR WRIT OF
: HABEAS CORPUS AND DENYING
RICHARD GANSHEIMER, Warden, : MOTIONS FOR SUMMARY
: JUDGMENT AND DECLARATORY
Respondent. : JUDGMENT
:
------------------------------------------------------

UNITED STATES DISTRICT JUDGE LESLEY WELLS

  This matter is before the Court on Anthony Braxton's pro se petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254, motion for summary judgment, and motion for declaratory judgment. (Docket Nos. 1, 29, 32).

  Mr. Braxton's habeas petition challenges his convictions in state court on the grounds of improper jury selection in violation of Batson v. Kentucky, 476 U.S. 79 (1986). The petition was referred to United States Magistrate Judge Kenneth S. McHargh for a Report and Recommendation ("R&R"). Magistrate Judge McHargh recommended that Mr. Braxton's petition be dismissed. (Docket Nos. 8, 22). Mr.

Braxton failed to timely object to the R&R, and this Court entered an Order adopting the R&R and denied Mr. Braxton's petition on 6 July 2005.  (Docket No. 24).  On Mr. Braxton's motion, this Court subsequently vacated the July judgment and permitted Mr. Braxton a second opportunity to file his objections to the R&R.  (Docket No. 27).  Mr. Braxton filed his objections on 29 August 2005, and then filed a motion for summary judgment on 22 March 2006.  (Docket Nos. 28, 29).  The Respondent filed a memorandum in opposition to Mr. Braxton's motion for summary judgment.  (Docket No. 30).  Mr. Braxton also filed a motion for declaratory judgment in September 2006 (Docket No. 32), which the respondent opposed (Docket No. 31).

For the reasons set forth below, the Court will adopt the R&R in part but will conditionally grant Mr. Braxton's petition for a writ of habeas corpus.  The Court will deny the petitioner's motions for summary judgment and declaratory judgment.

## I.  BACKGROUND

Petitioner Anthony Braxton was convicted by a Cuyahoga County jury on one count of felonious assault on a police officer, one count of receiving stolen property, and one count of failure to comply.  State v. Braxton, 2002 WL 31123906 at * 2 (Ohio App. 8 Dist. Sept. 26, 2002).  Mr. Braxton received a three year sentence for the felonious assault conviction, six months for receiving stolen property (to run concurrently with the felonious assault sentence), and three years for failure to comply, to run consecutively with the previous sentences.  Id.

Mr. Braxton appealed his convictions to the Ohio Court of Appeals, raising six assignments of error: (1) the State violated the Fourteenth Amendment's Equal

2

Protection Clause by exercising peremptory challenges on the basis of race; (2) Mr. Braxton's felonious assault conviction was not supported by sufficient evidence in violation of the Fifth and Fourteenth Amendments; (3) all three convictions are against the manifest weight of the evidence as there was no substantial evidence upon which a trier of fact could reasonably conclude Mr. Braxton's guilt beyond a reasonable doubt; (4) the trial court violated his Sixth Amendment rights by prohibiting Mr. Braxton from calling a key defense witness; (5) the trial court abused its discretion by prohibiting Mr. Braxton's counsel from commenting on exculpatory testimony in closing argument; and (6) Mr. Braxton's six-year sentence was disproportionate to similar crimes committed by similar offenders.  Braxton, 2002 WL 31123906.  Upon finding all six grounds without merit, the state appellate court upheld Mr. Braxton's convictions.  Id.  Mr. Braxton appealed his case to the Ohio Supreme Court, asserting as his single ground for relief an Equal Protection Clause violation in the form of a peremptory challenge based on race, but the Ohio Supreme Court did not accept the appeal for review.  State v. Braxton, 98 Ohio St.3d 1462 (Ohio 2003).  Mr. Braxton timely filed his habeas petition before this Court on 30 January 2004, raising the same six grounds for relief as raised with the Ohio Court of Appeals.

     Mr. Braxton's habeas petition asserts a Batson violation as his first claim for relief, arguing that the State engaged in racial discrimination when it exercised two of its four peremptory challenges to excuse African-American jurors (three members of the twenty-member jury panel were African-American).  The State's first peremptory challenge excused Juror No. 8, an African-American female who had worked for the Public Defender's Office as a legal secretary for fifteen years.  (Docket No. 14 Tr. p.

3

199, hereinafter "Tr."). The second challenge excused Juror No. 14, an African-American male who, according to the prosecuting attorney, appeared disinterested in serving on the jury. (Tr. pp. 199-200). The following colloquy occurred between the prosecuting attorney ("Q") and Juror No. 14 ("A") during the voir dire examination, prior to the peremptory challenge phase:

> Q: You work for One Source. That's a program that sets up people's --
>
> A: I'm cleaning the Brown's stadium.
>
> Q: Are you off this week? Are you able to take the week off? Is that a hardship for you especially?
>
> A: No it's not.
>
> Q: When you got your subpoena for jury service, what was going through your mind?
>
> A: Why me?
>
> Q: Why me? Did anybody in this room when they got their jury service think all right? You were excited? * * *
>
> (Juror No. 7 states, "It gives me the nights off.")
>
> Q: * * * And one of the reasons I ask you, [Juror No. 14], because you are a very laid back person or you are kind of exuding the fact you might not want to be here. Just to be honest. By body language. Now, I don't know. It could be you're laid back and you are kind of paying attention. And so I just have to ask, would you rather not be here on this case?
>
> A: You know, I have no problem. I served before.
>
> Q: And believe me, nobody wants to be here. I'm not trying to pick on you.
>
> A: I understand.
>
> Q: We have to pick a jury that's fair for the State and fair for the defendant and so, if I see someone I think - - I'm not just picking on

4

>    you, hey, maybe he doesn't want to be here.  You know I want to ask, okay?  So you are saying you will be all right?
>
>    A:  No problem.
>
>    Q:  Okay, do you have anything else for me, sir?
>
>    A:  No.

(Tr. pp. 127-129).

Immediately after the State exercised its second peremptory challenge to excuse Juror No. 14, the defense counsel moved for a mistrial on the grounds that the State was exercising its peremptory challenges on the basis of race.  (Tr. p. 197).  The trial judge asked the prosecutor to explain the justification for excusing the two jurors. Id. at 199-201.  Upon hearing the explanations, the judge ruled that the prosecutor's reasons "are sufficient bases to satisfy the standard of Batson" and overruled the defendant's Batson objection and request for a mistrial.  (Tr. p. 202).

On direct appeal, the Ohio Court of Appeals determined this assignment of error to be without merit:  "Braxton failed to make a prima facie case of purposeful discrimination, the prosecutor provided a bona fide race-neutral explanation for the challenge, and the [trial] court's determination was not clearly erroneous."  Braxton, 2002 WL 31123906 at * 3.  The appellate court afforded the trial judge great deference on the question of whether the prosecutor in this matter engaged in purposeful discrimination, reasoning that the prosecutor's evaluation of the state of mind of a juror is a matter within a trial judge's discretion.  Id.

5

## II.  REPORT AND RECOMMENDATION

Magistrate Judge McHargh's R&R recommends that this Court deny Mr. Braxton's habeas petition because, pursuant to § 2254(d), the state court proceedings were not contrary to nor did they involve an unreasonable application of clearly established federal law, and the proceedings did not result in a decision based on an unreasonable determination of the facts in light of the evidence before the state courts. (Docket No. 22).  The R&R specifically recommends that the first ground for relief is without merit because the state trial court correctly ruled that Mr. Braxton did not meet his burden of proving purposeful discrimination under Batson, and that the state appellate court correctly identified and reasonably applied the Batson standard.  The R&R further recommends that Mr. Braxton's last five grounds for relief (grounds two through six) are procedurally defaulted because they were not asserted in his appeal to the Ohio Supreme Court.

In his objection to the R&R, Mr. Braxton argues that "the prosecutor put forth fraudulent assertions in regard to [Juror No. 14]," and that the Court should not take the prosecution's concerns about Juror No. 14's body language under consideration in its Batson analysis.  (Docket No. 28).

Under Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636 (b)(1)(C), this Court reviews de novo those portions of the Magistrate Judge's R&R to which specific objections are made.  Upon review, this Court "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1). In the Sixth Circuit, objections to a magistrate judge's R&R "must be clear enough to enable the district court to discern those issues that are dispositive and contentious."

6

Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995).

Since Mr. Braxton does not object to the R&R's recommendation that grounds two through six of his petition are procedurally defaulted, the Court will adopt the Magistrate Judge's recommendation and not grant the petition on these grounds. The Court will only afford a substantive review, therefore, to Mr. Braxton's claim of an Equal Protection violation.

### III. STANDARD OF REVIEW

Federal habeas corpus law permits federal courts to entertain petitions on behalf of a person "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). This Court's review of the decisions of the state trial and appellate courts is governed by 28 U.S.C. § 2254(d) of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). A federal court may grant a writ of habeas corpus if a state court adjudication resulted in a decision that was either contrary to established federal law or involved an unreasonable application of established federal law. Williams v.Taylor, 529 U.S. 362, 370 (2000); 28 U.S.C. §2254(d)(1). "A state court decision is an unreasonable application of clearly established federal law if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." McClain v. Prunty, 217 F.3d 1209, (6th Cir. 2000) (quoting Williams, 529 U.S. at 413, internal quotations omitted).

The fundamental inquiry posed in a Batson challenge, whether the prosecutor engaged in purposeful discrimination on the basis of race during jury selection, is one of

7

"historical fact." Hernandez v. New York, 500 U.S. 352, 367 (1991). Under the AEDPA, "historical facts found by state courts are presumed correct and are rebuttable only by clear and convincing evidence." Lancaster v. Adams, 324 F.3d 423, 429 (6th Cir. 2003) (quoting Boggs v. Collins, 226 F.3d, 728, 736 (6th Cir. 2000), internal quotations omitted). Accordingly, the petitioner in the present matter bears the burden of rebutting this presumption of correctness by clear and convincing evidence. Id. (explaining that the standard of review of a Batson challenge in a habeas context is distinct from the "clearly erroneous" standard of review a federal appellate court's employs in reviewing a district court's Batson ruling).

### IV. LAW AND ANALYSIS

The focus of the Court's review of Mr. Braxton's petition is whether the state trial and appellate courts' application of Batson was objectively unreasonable. In Batson v. Kentucky, the United States Supreme Court held that the Equal Protection Clause of the Fourteenth Amendment prohibits a prosecutor from excluding potential jury members on the basis of their race. 476 U.S. at 89. The foundation on which Batson rests is the principle that while a defendant has no right to a jury composed entirely or partially of members of his own race, the defendant does have a right to be tried by a jury which was selected without any racial bias. Lancaster, 324 F.3d at 434 (quoting Batson, 476 U.S. at 85-86).

A Batson challenge requires a three step inquiry by the trial judge. First, the judge must determine that the complaining party made a prima facie showing that a

peremptory challenge was based on race.  United States v. Sangineto-Miranda, 859 F.2d 1501,1519 (6th Cir. 1988).  The party can establish the prima facie case by showing that he is a member of a cognizable racial group and that opposing counsel exercised peremptory challenges to remove members of his race from the venire.  Id.  Upon establishing a prima facie case, the burden then shifts to the party exercising the peremptory challenge to articulate a "race-neutral explanation for removing the juror in question."  United States v. Jackson, 347 F.3d 598, 604 (6th Cir. 2003).  Such justification need not persuade the judge, or even be plausible, so long as it states grounds that are race-neutral.  Id.  The final step requires the judge to determine whether the complaining party has satisfied his burden of proving purposeful discrimination.  Rice v. Collins, 546 U.S. 333, (2006).  It is at this final step that the trial court may consider the persuasiveness of the nondiscriminatory justification.  Purkett v. Elem, 514 U.S. 765, 768 (1995).[1]

In the instant case, the state trial court skipped the first step by not addressing whether Mr. Braxton had established a prima facie case.  Instead, once the Batson challenge had been raised, the trial judge immediately looked to the state to articulate a

---

[1] Purkett further explains: "It is not until the third step that the persuasiveness of the justification becomes relevant - the step in which the trial court determines whether the opponent of the strike has carried out his burden of proving purposeful discrimination.  At that state, implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination.  But to say that a trial judge may choose to disbelieve a silly or superstitious reason at step three is quite different from saying that trial judge must terminate the inquiry at step two when the race-neutral reason is silly or superstitious.  The later violates the principle that the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike."  514 U.S. at 768 (internal citations and quotations omitted).

9

non-discriminatory explanation for its peremptory challenges. "Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot." Hernandez, 500 U.S. at 359; Jackson, 347 F.3d at 604. Consequently, the issue of whether Mr. Braxton made a prima facie showing of intentional discrimination is moot, and the state appellate court erred when it concluded that Mr. Braxton failed to make such a showing. See Braxton, 2002 WL 31123906 at * 3.

In the second step of the Batson inquiry, the prosecuting attorney explained that Juror No. 8 was excused because she worked for the Public Defender's Office for fifteen years and the State believed that she would be better suited for a civil panel. Tr. p. 199. The prosecutor further explained,

> With regards to [Juror No. 14], he sat there the entire time with his arms crossed and his head bent over, and his hand – he showed no interest in being in here. *I specifically questioned him about his body language, and he even said he didn't want to be here.* So, I am not going to have someone sit on a jury that for the last two hours didn't listen to anything, had no intention of actually paying attention and then even *when I asked him, he said he didn't want to be here.* It's got nothing to do with race.
>
> With regards to [Juror No. 20], there is a potential if she gets on this panel and I can tell you right now we have no problem with her as well, the lone black juror.

Id. at 199-200 (emphasis added). In response, Mr. Braxton's attorney argued,

> I also point out as it relates to [Juror No. 14], right now as we sit here, [Juror No. 14's replacement] is seated in the jury, he's turned around, his arms are folded, right at the moment his head is down. Your Honor, that does not disqualify him.

10

Id. at 201. The judge responded,

> I agree with you, that does not disqualify a person from serving as a juror, but [the prosecutor] is attempting to present a nondiscriminatory reason for the reason he exercised his peremptory.

Id. Without explanation, the trial court overruled Mr. Braxton's Batson challenge, simply stating that the government's explanation "satisf[ied] the Batson standard" (the third step).

The threshold issue in this case is the whether the trial court, in the third step of its Batson inquiry, made unreasonable determinations in giving credit to the prosecutor's race-neutral explanations and whether the state appellate court was unreasonable in upholding that decision. "In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed." Miller-El v. Cockrell, 537 U.S. 322, 339 (2003). In cases where there is little evidence bearing on the issue, the courts may consider the demeanor of the attorney exercising the challenge, and habeas courts afford great deference to the trial courts in assessing the attorney's demeanor. Id. This deferential standard does not necessarily preclude relief to the habeas petitioner, however, if the habeas court guided by the AEDPA concludes that the state court "decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence." Id. at 340; see generally Lancaster, 324 F.3d 423 (affirming district court's granting of habeas petition on the grounds of the state trial court's Batson violation).

This Court finds that the state trial and appellate courts made unreasonable

11

factual determinations in light of the evidence presented in the state court proceeding and unreasonably applied clearly established federal law as determined by the Supreme Court.[2]  First, both the state trial and appellate courts glossed over the third step of the Batson inquiry.  The trial court offered no explanation for its ruling other than its conclusion that it disagreed with Mr. Braxton's position.  The state appellate court conclusively presumed that there was no discriminatory intent because a race-neutral explanation was tendered.  Braxton, 2002 WL 31123906 at ¶¶ 20, 22.  Contrary to these approaches, the third stage is a critical component of the Batson inquiry, for it is at this stage that the trial court determines whether the government's non-discriminatory reason is credible.  See Purkett, 514 U.S. at 768.  As discussed below, the prosecutor's justification for excusing Juror No. 14 is based primarily on statements Juror No. 14 never uttered.  Hence, by failing to address this third step, neither the trial court nor the appellate court made a reasonable application of federal law as set forth in Batson.

Moreover, with respect to the prosecutor's non-racial explanations, the state trial record contains evidence demonstrating that such explanations were pretextual.  The prosecutor relied on Juror No. 14's body language and, more importantly, on what he described as Juror No. 14's statements that "he didn't want to be here." (Tr. p. 200:2, 7).  Both the state trial and appellate courts ignored the fact that Juror No. 14 never made these statements.  A review of the prosecution's voir dire examination of Juror No. 14 reveals that the prosecutor went to great length to entice this juror into conceding that he had no interest in serving on this jury.  Yet, despite this prodding, Juror No. 14 stood

---

[2] Although Mr. Braxton asserts both of the prosecutor's peremptory challenges as a basis of his petition, the thrust of Mr. Braxton's argument focuses on Juror No. 14.

firm in his responses that he had no problems with jury service.  The prosecutor tried, unsuccessfully, to put words in Juror No. 14's mouth.  Given this blatant inconsistency between the prosecutor's stated "justification" and Juror No. 14's actual statements as recorded, the state courts' rulings were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

In its well-reasoned recommendation, the R&R relies on the fact that the prosecutor raised Juror No. 14's body language as the non-discriminatory explanation for excusing the juror (Docket No. 22 p. 16), and cites Sixth Circuit case law which holds that a juror's body language and demeanor are permissible race-neutral justifications in a Batson inquiry.  See United States v. Forrest, 402 F.3d 678, 687 (6th Cir. 2005).  In this case, however, the prosecutor did not justify his peremptory challenges  solely on Juror No. 14's body language, which he could have, but instead emphasized to the court incorrectly that Juror No. 14 voiced opposition to jury service.  The Court finds as the tipping point in this close analysis the fact that the prosecutor misquoted Juror No. 14 twice as having said he did not want to be there when in fact Juror No. 14 said exactly the opposite.  This blatant inconsistency between what the prosecutor argued and what the record demonstrates undermines the prosecutor's stated reasons for excusing Juror No. 14 and therefore exposes his pretext for racial discrimination.

In sum, the evidence is clear and convincing that the prosecutor's stated justifications for excusing Juror No. 14 were a pretext for discrimination.  The trial court failed to address the blatant inconsistency between the juror's actual response and the prosecutor's claims in Batson inquiry, and the appellate court unreasonably determined

13

that the trial court did not err.  Additionally, the appellate court made an unreasonable application of Batson in finding that Mr. Braxton did not satisfy his prima facie case when such matter had become moot.

The Court will grant Mr. Braxton a conditional writ of habeas corpus subject to a re-trial by the state.  See Hilton v. Braunskill, 481 U.S. 770, 775 (1987) ("Federal habeas corpus practice, as reflected by the decisions of this Court, indicates that a court has broad discretion in conditioning a judgment granting habeas relief. * * * [T]his Court has repeatedly stated that federal courts may delay the release of a successful habeas petitioner in order to provide the State an opportunity to correct the constitutional violation found by the court.); Gentry v. Deuth, 456 F.3d 687, 692 (6th Cir. 2006) (explaining that conditional grants provide the state with an opportunity to cure its constitutional error "out of a proper concern for comity among the co-equal sovereigns").

### III. CONCLUSION

For reasons explained, the Court accepts in part the Magistrate Judge's R&R.  Claims two through six of Mr. Braxton's petition are barred from substantive review by the petitioner's procedural defaults.

The Court conditionally grants Mr. Braxton's petition for a writ of habeas corpus on his Equal Protection violation claim.  The petitioner's judgment and conviction in State of Ohio v. Anthony Braxton, Cuyahoga County Court of Common Pleas No. CR 409753 is vacated and set aside and the petitioner shall be released from custody

unless the State of Ohio commences a new trial against him within 120 days after this judgment becomes final.

Finally, Mr. Braxton's motion for summary judgment and motion for declaratory judgment are denied as moot.

IT IS SO ORDERED.

                                                /s/ Lesley Wells
                                      UNITED STATES DISTRICT JUDGE

Date:  1 March 2007